# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 04-363(1) (DWF/RLE) |
| | Civil No. 09-1077 (DWF) |
| Respondent-Plaintiff, | |
| v. | **ORDER** |
| Alden James Roberts, | |
| Petitioner-Defendant. | |

---

Erica H. MacDonald, Assistant United States Attorney, United States Attorney's Office, counsel for Respondent-Plaintiff.

Alden James Roberts, *Pro Se*, Petitioner-Defendant.

Andrea K. George, Assistant Federal Defender, Office of the Federal Defender, counsel for Petitioner-Defendant.

---

## INTRODUCTION

This matter is before the Court upon Petitioner-Defendant Alden James Roberts' ("Petitioner-Defendant") *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner-Defendant filed his motion on May 4, 2009 (Doc. No. 36). The issue that Petitioner-Defendant has presented to this Court is whether he is entitled to be resentenced because the crime of Theft of a Motor Vehicle is no longer deemed a crime of violence for purposes of U.S.S.G. § 4B1.1. Consequently, Petitioner-Defendant alleges he no longer is deemed a career offender.

## BACKGROUND

On September 4, 2004, a federal grand jury returned a one-count Indictment against Petitioner-Defendant, charging him with Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3), 1151 and 1153(a). On January 12, 2005, Petitioner-Defendant pled guilty to the one-count Indictment. Notably, the Plea Agreement contained a waiver of appellate rights and a collateral rights provision. (Plea Agreement ¶ 9.) Specifically, paragraph 9 provided as follows:

> <u>Waivers of Appeal and Collateral Attack</u>. The defendant understands that by pleading guilty he will waive all rights to a trial on the question of his guilt. In the event that the Court accepts the plea agreement, including the guideline calculations set out in paragraph 6, and sentences the defendant at or below the guideline range for an offense level of 21 and a criminal history of VI, the defendant waives his right to appeal or to contest, directly or collaterally, his sentence on any ground.

On September 13, 2005, Petitioner-Defendant again appeared before the Court for sentencing. Consistent with the terms of the Plea Agreement and the Presentence Report ("PSR"), the Court determined that Petitioner-Defendant was a career offender because he had two prior felonies which were considered crimes of violence–a 1997 conviction for Theft of a Motor Vehicle and a 1997 conviction for First Degree Aggravated Robbery. Accordingly, the Court determined his offense level to be 21 based upon a criminal history category of VI, resulting in an advisory Guidelines range of 77 to 96 months imprisonment.

At sentencing, defense counsel argued that Petitioner-Defendant should be given a sentence at the bottom of the Guidelines range because he was a "career offender . . . by a

very slim margin." In turn, the United States argued that Petitioner-Defendant was properly deemed a career offender based upon his "life of crime" and noted other convictions including a Fifth Degree Assault conviction "where he punched his girlfriend and broke her nose." The United States also argued that the instant case before the Court was similar to his prior conviction for First Degree Aggravated Assault. Finally, the United States asserted that Petitioner-Defendant "poses a threat to public safety and a severe sentence is warranted in this case."

Given the unusual aggravated circumstances of this case and its uniqueness in the Court's experience, it is especially relevant what the facts were in this case in the context of the factors set forth in 18 U.S.C. § 3553(a).

In the early morning hours of June 6, 2004, Petitioner-Defendant and an accomplice committed a number of violent burglaries of their neighbors' homes. The aggravated details of these crimes are set forth in paragraphs 5 through 10 of the PSR Moreover, at least two of the victims in this case were "vulnerable victims" because one of the victims used an oxygen tank and the other was a double amputee. *See* PSR ¶ 22; Sentencing Tr. at 13.

The Court sentenced Petitioner-Defendant to 88 months in prison.

Initially, the Court must observe that quite separate from the career offender issue before the Court, that any objective analysis of the § 3553(a) factors would suggest that this was a very favorable plea agreement and that an 88-month sentence, quite apart from what the advisory Guidelines called for, would have been perhaps contrary to those

factors but for the cooperation of the Petitioner-Defendant. The cooperation of the Petitioner-Defendant, in the Court's view, rendered the plea agreement reasonable under all of the circumstances so that the interests of justice were not compromised, despite the severity of the underlying facts of the crime pled to.

## DISCUSSION

I. **Waiver of Appellate Rights: Paragraph 9 of Petitioner-Defendant's Plea Agreement**

As noted above, as part of his plea agreement, Petitioner-Defendant agreed to waive his right to appeal or collaterally challenge any sentence as long as the Court sentenced him within the Guidelines range of 77 to 96 months imprisonment. The Court sentenced Petitioner-Defendant consistent with the plea agreement. Consequently, the waiver provision applies to the action before the Court.

As noted by the United States, a waiver of collateral attack rights in a plea agreement is enforceable. *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000). In order for the waiver to be enforced, the Court must decide that: (1) the issue before the Court falls within the scope of the waiver; (2) the Petitioner-Defendant entered into both the plea agreement and waiver knowingly and voluntarily; and (3) enforcement of the waiver would not result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003).

Here, the transcript clearly speaks for itself. The issue before the Court is clearly within the scope of the waiver, namely, the sentence imposed by this Court. The

4

transcript clearly establishes that the Petitioner-Defendant entered his plea knowingly and voluntarily. And, most importantly, the sentence the Court imposed was, if anything, was favorable to the Petitioner-Defendant, notwithstanding the career offender dispute given the serious nature of the crime. The Court states this, in part, because, with or without the career offender provisions, the Court would have imposed at least an 88-month sentence.

## II. Procedural Deficiencies

The Court assumes that Petitioner-Defendant is utilizing this § 2255 action to serve as a substitute for a direct appeal. Failure to raise an issue on direct appeal, in most cases, constitutes procedural default and precludes Petitioner-Defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000). It is true that under certain circumstances a defendant may be excused from such a procedural default. For example, showing cause, excusing the default, and actual prejudice from the errors or by demonstrating actual innocence. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

The Court agrees with the United States that there is a procedural default before the Court because the Petitioner-Defendant did not raise this issue in a direct appeal. Accordingly, Petitioner-Defendant is deemed in default by this Court even though the Court has reached the merits of a § 2255 petition.

Secondly, with respect to the procedural deficiencies of Petitioner-Defendant's actions, the Eighth Circuit has ruled that a Sentencing Guidelines argument is not a cognizable claim under § 2255. *Auman v. United States*, 67 F.3d 157, 161 (8th Cir.

1995). Petitioner-Defendant's only claim before this Court is that the Court erred in making the determination that he was a career offender. Fair scrutiny of the procedural history of this case, including the plea of guilty transcript and the sentencing transcript clearly shows that there was no miscarriage of justice in the claim.

## III. Timeliness

Petitioner-Defendant has failed to comply with the one-year time limit for filing a § 2255 motion as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an act which became effective April 24, 1996. Admittedly, prior to the enactment of the AEDPA, a federal defendant could bring a § 2255 motion at any time. The AEDPA, however, created a one-year time limit. Specifically, § 2255 motions may be filed up to one year from the date of the latest applicable triggering event. The triggering events are as follows:

>  (1)  the date on which the judgment of conviction becomes final;
> 
>  (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> 
>  (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> 
>  (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. *See Moore v. United States*, 173 F.3d 1131, 1133 (8th Cir. 1999).

For purposes of discussion, even assuming *Begay v. United States*, 128 S. Ct. 1581 (2008), is applied retroactively, following exception number 3 set forth above, the latest triggering event on the case before the Court occurred on April 16, 2008, when that case was decided. Thus, even if *Begay* was made retroactive to cases on collateral review, Petitioner-Defendant would have had up until April 16, 2009, to file his motion, as noted by the United States. The motion was filed in May 2009. Consequently, Petitioner-Defendant's § 2255 motion is untimely and is subject to dismissal on that ground alone. *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000).

## CONCLUSION

For the reasons stated above, Petitioner-Defendant is not entitled to any relief pursuant to 28 U.S.C. § 2255. The fact that Petitioner-Defendant has also filed objections to the motions for extensions of time to permit the United States to file a response to his petition is of no moment in the context of the seriousness of this case. As suggested by the Court earlier, even without the career offender status at the time of sentencing, a sentence of at least 88 months is entirely consistent with those factors set forth in § 3553(a). Even if there were to be a resentencing today, under the current state of the law, there is little likelihood that the sentence would be anything less than 88 months, for the reasons stated. Moreover, the interests of justice do not otherwise require this Court to

7

grant Petitioner-Defendant's relief requested under 28 U.S.C. § 2255.  For these reasons, the Court denies Petitioner-Defendant's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.

Dated:  August 11, 2009         <u>s/Donovan W. Frank</u>
                                            DONOVAN W. FRANK
                                            United States District Judge